J-A02023-25

2025 PA Super 34

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
v. :
:
:
:
VANESSA REGINA BAINEY : No. 529 WDA 2024

Appeal from the Order Entered April 3, 2024
In the Court of Common Pleas of Clearfield County Criminal Division at
No(s): CP-17-CR-0000026-2022

BEFORE: KUNSELMAN, J., MURRAY, J., and BECK, J.

OPINION BY MURRAY, J.:                          **FILED: February 14, 2025**

The Commonwealth appeals from the order granting Vanessa Regina

Bainey's (Defendant) motion to dismiss the criminal charges against her,

based on her incompetence to stand trial absent certain accommodations,

which the trial court determined it could not implement. After careful review,

we reverse and remand for trial.

> The trial court summarized the allegations against Defendant:
>
> On May 2, 2021, at approximately 9:23 a.m., members of the
> Pennsylvania State Police were requested to assist Clearfield
> County Children, Youth and Family Services (CYFS) with an
> incident that occurred inside the residence located at 894
> Horse[s]hoe Curve Road, Decatur Township, Clearfield County.
> The series of events that gave rise to the incident began earlier
> that morning, at approximately 3:58 a.m., when [Defendant]
> contacted 911 and reported that her [twenty-three month old] son
> [(the Child)] had her hair wrapped around his neck and [he]
> started to choke. The report indicated that [] Defendant had not
> realized that her son had her hair around his neck, but [he] was
> no longer choking.

The [Child] was transported, by his family, to Mount Nittany Medical Center due to issues of breathing/losing consciousness. The Child was observed to have red ligature marks around his neck. Dr. Bridget Flickinger of Mount Nittany Medical Center evaluated the Child. In her opinion, the Child's injuries [were] not consistent with a hair tourniquet[,] and that a neck hair tourniquet [involving] a twenty-three (23) month old male would be highly unusual. Dr. Flickinger stated that the injuries were more consistent with a cord or wire. Upon Dr. Flickinger's request[,] the Child was transferred to Geisinger Medical Center in Danville, P[ennsylvania], and was seen by Dr. [Paul] Bellino. Dr. Bellino stated that the [ligature] mark was demonstrative of strangulation.

Trial Court Opinion, 7/5/24, at 1-2.

The Commonwealth charged Defendant with two counts each of aggravated assault and endangering the welfare of children; and one count each of strangulation, simple assault, and recklessly endangering another person.[1] **See** Criminal Information, 2/18/22.

The trial court detailed what next transpired:

On November 8, 2022, [] Defendant filed a Petition for Psychiatric Examination Pursuant to Section 7402 of [the] Mental Health Procedures Act. [**See** 50 P.S. § 7402(c) ("Application to the court for an order directing an incompetency examination may be presented by … a person charged with a crime [or her] counsel….").] A hearing on [the petition] was held on November 28, 2022. … [O]n January 20, 2023, the court ordered [] Defendant to undergo an outpatient psychiatric examination[,] and that a written report be provided to the Commonwealth and defense counsel.

Trial Court Opinion, 7/5/24, at 2 (some capitalization modified).

---

[1] 18 Pa.C.S.A. §§ 2702(a)(9), (a)(8), 4304(a)(1), 2718(a)(1), 2701(a)(1), 2705.

Dr. Louis S. Martone, M.D. (Dr. Martone), evaluated Defendant on April 14, 2023, and authored a report dated May 13, 2023. Dr. Martone's report stated:

The available data and my interview of [Defendant] indicate[] that she suffers from borderline intellectual functioning and unspecified anxiety disorder[,] as well as learning disabilities in math and reading….

[Defendant] has had several [past] psychological evaluations, which document full scale IQ's from 69 to 75[,] and a borderline level of intellectual functioning. Additionally, testing results have indicated average speed of processing, below average functional and visual motor perceptual skills and motor coordination, borderline verbal and nonverbal reasoning abilities, and extremely low range of attention and concentration skills. … [Defendant] has also reported symptoms of anxiety[,] which have been noted to a limited extent on prior testing and which she indicated have impacted her concentration in the courtroom.

Dr. Martone Report, 5/13/23, at 9.

The report further indicated Defendant

was able to provide an appropriate understanding of the circumstances of [her] charges. She was able to identify the pleadings available to her in the courtroom. She was able to report that a felony is worse than a misdemeanor. She was able to communicate what she has been told [about] her possible sentences … for at least two of her charges, and made a guess regarding her possible minimum sentence (three to five years). She was able to identify her public defender by name and provide an understanding of the role of this attorney. She was able to provide an understanding of the role of the prosecution. She was able to provide an accurate understanding of the role of the judge and jury.

She required education as to the sequence of a trial. She was able to provide a general understanding that the prosecution and defense attorney [introduce] evidence and question each other's evidence[,] and the jury decides the verdict. However, she had difficulty retaining [the fact] that there are opening and

closing statements, as well as the steps which occur after an individual is found guilty. She was [consistently] able to report that the judge decides the sentence[.]

She was able to understand the concepts of overruling and sustaining an objection with education[,] and was able to apply these concepts to scenarios provided to her. She was able to exhibit appropriate courtroom behavior and vocalize appropriate courtroom behavior when provided with hypothetical situations, such as a witness lying on the stand.

She was able to define the legal concept of a plea bargain[, but] did require some education to improve her understanding of this concept. She was able to make appropriate plea bargain choices when hypothetical plea bargain scenarios were provided to her. She was able to spontaneously provide a rudimentary understanding of the jury selection process, as well as what a [Pa.R.Crim.P.] 600 waiver means. She was able to spontaneously report exculpatory information. She was able to identify evidence which could be used in her defense; however, her overall legal strategy was rudimentary and naïve.

*Id.* at 5-6 (paragraph breaks added).

Dr. Martone concluded:

Although [Defendant] suffers from intellectual and learning disabilities, she was able to provide an appropriate understanding for most of the roles of the various courtroom personnel and simple legal concepts. She did have difficulty with more complex concepts, but was able to retain some of the education provided to correct her answers. She does require continued education on topics such as the full sequence of a trial and more complex legal concepts. However, **overall, she was able to provide a factual understanding of courtroom personnel and concepts. She was able to provide exculpatory information and a rudimentary legal strategy.** Additionally, she was able to exhibit and vocalize appropriate courtroom behavior and make appropriate plea bargain choices when hypothetical scenarios were presented to her. **It is my opinion that she demonstrated a factual and rational understanding of the charges against her.** Based on the data available at the time of the writing of this report, [Defendant] suffers from the mental diseases or defects of borderline intellectual functioning, an

unspecified anxiety disorder, and potential learning disabilities[;] however, **these diseases or defects of the mind do not render her substantially unable to understand the nature and consequences of the proceedings against her.**

*Id.* at 9 (emphasis added).

However, Dr. Martone's report stated

[t]here is concern regarding [Defendant's] ability to "participate and assist" her attorney in her own defense. Based upon the available data, **it is my conclusion that she is able to "participate and assist" in her defense**[;] **however she requires accommodations in order to do so**[,] and this is due to her borderline intellectual functioning and learning deficits. In order to accommodate these disabilities and defects, it is recommended that:

(1) **The courtroom should be devoid of any unnecessary personnel in order to create a smaller group environment for** [**Defendant**];

(2) She should be provided with an extended period of time when concepts are being explained to her;

(3) Efforts should be made to deliver information in multiple modalities (*i.e.*, pairing visual stimuli with verbal, if possible) to improve retention and recall;

(4) She should be provided assistance when being presented with new and more complex information, material, or direction including the information being read to her and presented to her in a meaningful context, in simple terms, one at a time, simplified, interpreted, jargon free, and with repetition;

(5) Review of new information provided to her at regular intervals will assist in improving her retention. Frequent checks should occur to assess for her understanding of newly presented material and concepts;

(6) She should not be asked if she understood something, but rather [asked] to explain it herself;

(7) She will require an increased amount of time and effort from defense counsel to keep her abreast of her legal situation as it

- 5 -

unfolds. She will require ongoing explanation of new legal concepts and circumstances as they occur;

(8) **Consideration should include reduction of trial days to half day segments, increased recesses to allow for defense counsel to engage with** [D]efendant **or other similar allowances**; and

(9) Consideration can be given for additional counsel to assist educating [Defendant] on concepts, issues and factual information related to her trial[,] both during and/or in between courtroom hours.

*Id.* at 9-10 (emphasis added).

On July 19, 2023, relying on Dr. Martone's report, Defendant filed a motion to dismiss the charges on the grounds that she was incompetent to stand trial. On August 11, 2023, the trial court held a hearing, at which Dr. Martone testified. Defendant did not appear for the hearing. However, the trial court directed that it take place in her absence, noting the competency issue was time-sensitive because the case was scheduled for a jury trial the following week. *See* N.T., 8/11/23, at 5-6. At the hearing's conclusion, the court took the issue under advisement, and the trial was continued. *Id.* at 23.

On March 26, 2024, the trial court heard oral argument on Defendant's motion to dismiss. On April 3, 2024, the court entered an order dismissing the charges.

In its Pa.R.A.P. 1925(a) opinion, the trial court stated it

cannot realistically implement the recommendations made by Dr. Martone[,] such that [] Defendant would be deemed competent to stand trial and assist in her defense. Clearfield County is a two

(2) judge county. Both judges' schedules are scheduled at maximum capacity and any proceedings before the [c]ourt are scheduled, at a minimum, three (3) months in advance. If the [c]ourt was to implement the time-related recommendations, it would take the [c]ourt approximately three (3) weeks, if not more, to oversee a three (3) day trial. This approximation is based upon the recommendation that the [c]ourt operate on half-day increments with frequent breaks to ensure [] Defendant understands the concepts being discussed.

With regard to the first accommodation, criminal trials are open to the public[;] it is therefore[] impossible for the [c]ourt to limit the number of people in the room. Dr. Martone testified that, "the more individuals present, the higher the possibility that it will impact [Defendant's] ability to maintain focus due to her borderline intellectual functioning and anxiety." [N.T., 8/11/23, at] 11. Critically, Dr. Martone testified that [] Defendant could not assist in preparing a defense or assist her attorney during trial without a majority of the suggested accommodations. ***Id.*** at [] 16.

… Defendant requires, at the very least, a majority of the aforementioned accommodations in order to assist in preparing a defense or to assist her attorney during trial. The recommendations are exceedingly comprehensive and time consuming[,] and the [c]ourt is unable to provide the time and resources to adequately fulfill said accommodations. If [] Defendant was made to stand trial, the [c]ourt's inability to accommodate [] Defendant would put [] Defendant in a position in which she is unable to assist in her defense and, therefore, incompetent to stand trial.

Trial Court Opinion, 7/5/24, at 3-4.

The Commonwealth timely appealed. The Commonwealth and the trial court have complied with Pa.R.A.P. 1925.

The Commonwealth identifies a single question for our review:

Whether the trial court erred when it dismissed the charges against [Defendant] due to testimony and a report that indicated [Defendant] could only be tried if certain suggested accommodations were in place during a trial, [where] the trial

court determined it could not implement [the] accommodations[, though Defendant] would be competent if [the] accommodations were made[?]

Commonwealth Brief at 4.

We observe the following standard of review:

A defendant is presumed competent and it is [her] burden to show otherwise, the determination of which is within the sound discretion of the trial court. *Commonwealth v. Sanchez*, 907 A.2d 477, 490 (Pa. 2006) (citing *Commonwealth v. Sam*, 635 A.2d 603, 606 (Pa. 1993); *Commonwealth v. Chopak*, 615 A.2d 696, 700 (Pa. 1992)). When a competency hearing takes place, incompetency may be established by a preponderance of the evidence. 50 P.S. § 7402(d). The sensitive nature of competency determinations requires the appellate courts to afford great deference to the conclusions of the trial court, which has had the opportunity to observe the defendant personally.[2] *Sanchez*, 907 at 490 (citing *Chopak*, *supra*). When the record supports the trial court's determination, we will not disturb it. *Id.*

*Commonwealth v. Stevenson*, 64 A.3d 715, 720 (Pa. Super. 2013) (some citations modified; footnote added); *see also Bomar*, 826 A.2d at 860 ("A determination of a defendant's competency rests in the sound discretion of the trial court and can be disturbed on appeal only on a showing of an abuse of that discretion.").

An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the

---

[2] Here, our deference to the trial court's conclusions is tempered by the fact that the court held its competency hearing in Defendant's absence. *See* N.T., 8/11/23, at 5-6; *see also Commonwealth v. Bomar*, 826 A.2d 831, 860 (Pa. 2003) (stating "that a trial judge's competency determination should be afforded 'great deference' **because** the judge has the opportunity to personally observe the defendant's behavior." (emphasis added)). The trial court's opinion gives no indication that its conclusions were informed by its personal observation of Defendant. *See generally*, Trial Court Opinion, 7/5/24.

judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

***Commonwealth v. Dunmore***, 324 A.3d 1, 5 (Pa. Super. 2024).

Section 7402(a) of the Mental Health Procedures Act provides:

**(a) Definition of Incompetency.**--Whenever a person who has been charged with a crime is found to be substantially unable to understand the nature or object of the proceedings against him or to participate and assist in his defense, he shall be deemed incompetent to be tried, convicted or sentenced so long as such incapacity continues.

50 P.S. § 7402(a). "A competency inquiry is driven by Fourteenth Amendment due process concerns regarding a defendant's ability to understand criminal charges and proceedings, and to consult counsel, so as to ensure the ability to manage a meaningful defense." ***Sanchez***, 36 A.3d at 56 n.15.

To prove incompetence, a defendant

must establish "he [i]s either unable to understand the nature of the proceedings against him or unable to participate in his own defense." ***Commonwealth v. Flor***, 998 A.2d 606, 617 (Pa. 2010) (quoting ***Commonwealth v. Pruitt***, 951 A.2d 307, 316 (Pa. 2008)). More specifically, "the relevant question in a competency determination is whether the defendant has sufficient ability at the pertinent time to consult with counsel with a reasonable degree of rational understanding, and to have a rational as well as a factual understanding of the proceedings." ***Id.*** (quoting ***Pruitt***, 951 A.2d at 316).

***Commonwealth v. Johnson***, 289 A.3d 959, 1044 (Pa. 2023) (citations modified).

Here, the Commonwealth argues "the trial court erred in deciding to dismiss the charges because it would be a hardship for [the court] to

- 9 -

implement accommodations that would make [Defendant] competent." Commonwealth Brief at 15. The Commonwealth notes Dr. Martone's opinion that Defendant understood "the nature and consequences of the proceedings against her." *Id.* at 11 (quoting Dr. Martone Report, 5/13/23, at 9). The Commonwealth further points out Dr. Martone's opinion that Defendant could participate in her defense and assist her counsel if accommodations were made. *Id.* at 7 (citing N.T., 8/11/23, at 16); *see also* Dr. Martone Report, 5/13/23, at 10. The Commonwealth highlights Dr. Martone's testimony that, in his opinion, Defendant would **not** need "**the full extent of every accommodation. However, a majority of the accommodations would be needed** for her to be able to participate and assist in her criminal defense." N.T., 8/11/23, at 16 (emphasis added). The Commonwealth disputes the trial court's conclusion that the court cannot implement the accommodations. Commonwealth Brief at 15.

Defendant counters the trial court properly concluded that "it cannot reasonably implement the recommendations made by Dr. Martone such that [] Defendant would be deemed competent to stand trial and assist in her own defense." Defendant's Brief at 11 (quoting Trial Court Opinion, 7/5/24, at 3).

Dr. Martone's first accommodation involved limiting the number of people in the courtroom, while the remaining eight accommodations generally involve affording Defendant extra time and assistance to ensure she understands the proceedings (time-based accommodations). ***See*** Dr.

J-A02023-25

Martone Report, 5/13/23, at 10 (quoted *supra*). The time-based accommodations include Dr. Martone's recommendation that the trial court consider "reduction of trial days to half day segments, increased recesses to allow for defense counsel to engage with [D]efendant or other similar allowances [(eighth accommodation)]." *Id.*

We first consider the time-based accommodations. The Commonwealth asserts the trial court is not unable to implement the time-based accommodations, and argues the accommodations merely constitute an inconvenience. Commonwealth Brief at 15. The Commonwealth "recognizes that the accommodations do create an inconvenience for the trial court," but "submits that an inconvenience to the court should not outweigh the importance of prosecuting cases of such a serious nature and seeking justice for the victim." *Id.* Defendant disagrees, arguing the trial court properly determined that a trial implementing the recommended "half-day proceedings and frequent recesses … could not logistically be accommodated by the court's calendar." Defendant's Brief at 9.

Our review discloses the trial court specifically took issue only with the eighth accommodation, but implicitly referenced the other time-based accommodations when it determined the accommodations "are exceedingly comprehensive and time consuming[,] and the [c]ourt is unable to provide the time and resources to adequately fulfill said accommodations." Trial Court Opinion, 7/5/24, at 4. The record does not support this determination.

Regarding half-day trial proceedings, Dr. Martone testified:

My recommendation would be half day segments in order for [Defendant] to be able to assist in her defense. As the day wears on, my concern becomes her distractibility, her fatigue in terms of becoming involved in the court proceeding, [and] understanding what is going on. I would have concerns if the trial went beyond a half day for her ability to assist in her defense given her intellectual disabilities. Although she is not diagnosed [with] an intellectual disability, her intellectual functioning is of the borderline range.

N.T., 8/11/23, at 18.

Dr. Martone recommended increased recesses only "if [Defendant] is requesting" the recesses. *Id.* at 18-19. He testified:

What I can say is that [**Defendant**] **was able to maintain her concentration during my evaluation**[,] **which was at least two hours long**. However, the concern would be if she is having trouble understanding a concept that has been discussed in the courtroom[,] that she could have a recess to speak with her attorney.

*Id.* at 19 (emphasis added).

Dr. Martone also testified that Defendant's need for accommodations could be reduced through pretrial preparation in which "she could meet with her lawyer for extended periods of time and have concepts explained." *Id.* at 20. However, Dr. Martone added,

when [Defendant] comes into the courtroom, … if a new legal concept or … a concept she is not familiar with would come up, [she might not] understand it, and she would still need the accommodations.

*Id.*[3]

During the competency hearing, the trial court stated:

**I don't know how long this [trial] had been scheduled for[,] but if it is scheduled for three days, then you're talking a minimum of six days if we go with half days. The [c]ourt just doesn't have that in [its] schedule <u>until probably the beginning of next year</u> quite honestly.**

*Id.* at 12 (emphasis added). This statement, made in August, indicates **the trial court had the requisite time available, provided the trial was scheduled five or six months in advance.**

In its Rule 1925 opinion, the trial court explained that

Clearfield County is a two (2) judge county. Both judges' schedules are scheduled at maximum capacity and any proceedings before the [c]ourt are scheduled, at a minimum, three (3) months in advance. If the [c]ourt was to implement the time-related recommendations, it would take the [c]ourt approximately three (3) weeks, if not more, to oversee a three (3) day trial. This approximation is based upon the recommendation that the [c]ourt operate on half-day increments with frequent breaks to ensure [] Defendant understands the concepts being discussed.

Trial Court Opinion, 7/5/24, at 3-4.

The trial court's stated rationale is problematic in several respects. Initially, our review discloses no record support for the trial court's assumption that the trial would, under normal circumstances, last three days. We discern

---

[3] A defendant's inability to grasp complex legal concepts does not render her incompetent to stand trial. We agree with the Eleventh Circuit's observation that "[e]ven perfectly competent defendants often do not fully comprehend the intricacies of some of the defensive theories offered by their lawyers. That level of comprehension is not a requirement of competency." ***U.S. v. Hogan***, 986 F.2d 1364, 1373 (11th Cir. 1993).

no indication that the trial court asked the parties how many witnesses they intended to call or how long they estimated the trial would last—with or without the accommodations. *See* N.T., 8/11/23, at 12 (trial court's statement, "I don't know how long this [trial] had been scheduled for….").

Next, even accepting the trial court's three-day estimate, we observe that the trial court's estimate as to length of the trial, with accommodations, morphed from six days, *see id.*, to three weeks or more. *See* Trial Court Opinion, 7/5/24, at 4 (stating the three-week "approximation is based upon the recommendation that the [c]ourt operate on half-day increments with frequent breaks…."). Our review of Dr. Martone's report discloses he did not recommend half-day proceedings **and** frequent recesses; rather, he recommended half-day proceedings **or** frequent recesses. *See* Dr. Martone Report, 5/13/23, at 10 (eighth accommodation). In his hearing testimony, Dr. Martone clarified that he recommended recesses only as needed, and that extensive pretrial preparation could reduce Defendant's need for in-court accommodations. *See* N.T., 8/11/23, at 18-20. While the record supports the trial court's six-day estimate, its three-week estimate appears to be an exaggeration. We also note that half-day trial proceedings would enable the court to schedule other business during the other half of the day.

Finally, our review of the law discloses no legal support for the court's conclusion that it can dismiss criminal charges when a trial may be burdensomely lengthy. Clearfield's status as a two-judge county affords it no

special dispensation in this regard. The court cannot avoid implementing reasonable accommodations by simply pleading a crowded schedule and dismissing the case.[4, 5]

In sum, we agree with the Commonwealth that the time-based accommodations constitute a mere inconvenience for the trial court. Our review discloses neither the record nor the law supports the trial court's determination that it "is unable to provide the time and resources to adequately fulfill" the time-based accommodations. Trial Court Opinion 7/5/24, at 4. Under these circumstances, the trial court's determination is manifestly unreasonable and therefore constitutes an abuse of discretion. We therefore reverse the trial court's determination on this basis and remand for further proceedings. On remand, the trial court shall implement reasonable accommodations to ensure Defendant's ability "to consult with counsel with

_____

[4] The Commonwealth does not argue that Dr. Martone's recommended accommodations are unreasonable or unnecessary to ensure Defendant's competence, and we express no opinion on that issue.

[5] Interestingly, in **U.S. v. Mitchell-Yarbrough**, No. CR 18-32, 2019 WL 2949883 (W.D. Pa. July 9, 2019), Dr. Martone evaluated the defendant regarding his competency to stand trial. **Id.** at *1. He opined the defendant was competent if afforded a series of accommodations broadly similar to the time-based accommodations in the instant case, including half-day proceedings or increased recesses. **Id.** at *2-3. The federal district court found the defendant competent and ordered that the "accommodations are adopted and shall be implemented as required in all hearings, conferences and any trial proceedings conducted in this case." **Id.** at *3.

- 15 -

a reasonable degree of rational understanding, and to have a rational as well as a factual understanding of the proceedings." *Pruitt*, 951 A.2d at 316.

We next consider the first accommodation, in which Dr. Martone recommended that "[t]he courtroom should be devoid of any unnecessary personnel in order to create a smaller group environment for [Defendant.]" Dr. Martone Report, 513/23, at 10. The Commonwealth argues the trial court's determination that implementing this accommodation would be problematic "relies heavily on possibilities." Commonwealth Brief at 15. The Commonwealth asserts it "is possible that multiple people will come to watch the trial, but it is not a guarantee. And likewise, it is not a guarantee that [Defendant] will be rendered incompetent merely because there are observers in the gallery." *Id.* Defendant counters the "trial court aptly noted that criminal trials are open to the public, making it impossible for the court to limit the number of people in the [court]room." Defendant's Brief at 8.

During the competency hearing, the trial court stated the courtroom would typically include fourteen jurors, the assistant district attorney, the arresting officer, a court reporter, two deputy sheriffs, and three tipstaves. N.T., 8/11/23, at 8-9. The court asked Dr. Martone, "Is that, in your opinion, too many people in this case?" *Id.* at 9. Dr. Martone answered, "No, in my opinion, it is not." *Id.*

> Asked what number of people would be too many, Dr. Martone testified there is no specific number. The recommendation is to attempt to decrease the number of individuals in the courtroom to make it

a smaller environment for [Defendant]. I don't have a specific number. What I can say is that the larger the number, the more likely it is that it could impact [Defendant] in regard to her distractibility and anxiety. … [T]he concern … would be her focus, her ability to maintain her focus and follow the court proceedings. **Now, in terms of the court staff [that the trial court] had mentioned, I don't see that being an issue. My concern does lie with the gallery, depending on how crowded it would be[,] because obviously that could create anxiety**.

*Id.* at 9-10 (emphasis added). Dr. Martone clarified "it would be unlikely that one person or two people in the gallery would be an issue." *Id.* at 11.

The trial court's opinion devoted two sentences to the first accommodation:

With regard to the first accommodation, criminal trials are open to the public[;] it is therefore[] impossible for the [c]ourt to limit the number of people in the room. Dr. Martone testified that, "the more individuals present, the higher the possibility that it will impact [Defendant's] ability to maintain focus due to her borderline intellectual functioning and anxiety." [N.T., 8/11/23, at] 11.

Trial Court Opinion, 7/5/24, at 4.

Importantly, we reiterate Dr. Martone's testimony that, in his opinion, **Defendant would not need "the full extent of every accommodation."** N.T., 8/11/23, at 16 (emphasis added). We determined above that the trial court could implement the eight time-based accommodations. Therefore, even if the first accommodation cannot be implemented, Defendant will still benefit from a vast majority of the accommodations. Our review of Dr. Martone's report and testimony suggests that any difficulties Defendant may experience from a crowded courtroom could be alleviated through application

of the other accommodations. Dr. Martone's report and testimony do not support a determination that an inability to implement the first accommodation would, by itself, render Defendant incompetent to stand trial.

In the alternative, we agree with the Commonwealth that the prospect of a crowded courtroom becoming an issue is purely speculative. The record contains nothing to suggest that a large number of observers is anticipated. There is no indication in the record that this case is of particular interest to the general public or the press, nor did any party suggest that either Defendant or the victim had large numbers of friends or supporters likely to attend. Even if the first accommodation was absolutely critical to ensuring Defendant's competence, the record would not support the trial court's preemptive incompetency determination.

The trial court stated, without citing authority, that it is "impossible" for a court to limit the number of people in a courtroom. Trial Court Opinion, 7/5/24, at 4. However, there are situations in which a court may exclude people from the courtroom. The United States Supreme Court has observed that

> although the public-trial right is structural, it is subject to exceptions. *See* Simonson, The Criminal Court Audience in a Post–Trial World, 127 Harv. L. Rev. 2173, 2219–2222 (2014) (discussing situations in which a trial court may order a courtroom closure). Though these cases should be rare, a judge may deprive a defendant of his right to an open courtroom by making proper factual findings in support of the decision to do so. *See Waller* [*v. Georgia*, 467 U.S. 39, 45 (1984)].

*Weaver v. Massachusetts*, 582 U.S. 286, 298 (2017).

- 18 -

> The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

*Waller*, 467 U.S. at 45 (citation omitted); *see also Commonwealth v. Jordan*, 212 A.3d 91 (Pa. Super. 2019) (generally discussing the public-trial right, and recognizing that a court may exclude observers when necessary to maintain order and courtroom security).

We are unable to locate precedent from any jurisdiction in which a defendant's competence to stand trial hinged on the exclusion of observers from the courtroom. The instant situation appears to be a matter of first impression, and the record is not ripe for a determination of the issue. Nevertheless, we expect courts faced with such a situation to evaluate it in light of the applicable legal standards, and consider whether there are narrowly tailored alternatives that would allow a trial to proceed. [6]

---

[6] *See*, *e.g.*, Jenia I. Turner, Remote Criminal Justice, 53 Tex. Tech L. Rev. 197, 210 (2021) ("virtual jury trials have been authorized during the [COVID-19] pandemic…."); National Center for State Courts, Constitutional Concerns Related to Jury Trial During the COVID-19 Pandemic, at 5 (2020) ("Live streaming of trial proceedings during the pandemic likely satisfies the *Waller* test").

Order reversed.[7, 8]  Case remanded for proceedings consistent with this

opinion.  Jurisdiction relinquished.

_____

[7] The trial court's ruling would effectively grant Defendant a license to commit crimes in Clearfield County without consequence, as she would presumably require the same accommodations in any future criminal proceeding. Prevention of this absurd outcome makes it all the more imperative that the trial court strive to implement reasonable accommodations.  "A hallmark of society is holding its members accountable for their conduct." *Commonwealth v. Banks*, 521 A.2d 1, 16 (Pa. 1987) (affirming trial court's determination that defendant was competent to stand trial despite his "bizarre" and "incomprehensibl[e]" behavior).

[8] We further observe that the trial court separately erred in dismissing the charges at the same time it determined Defendant was incompetent to stand trial.  Section 7403(b) of the Mental Health Procedures Act provides that "[a] determination of incompetency to proceed **shall effect a stay of the prosecution for so long as such incapacity persists**."  50 P.S. § 7403(b) (emphasis added).  Section 7403(e) further provides:

> When the court, on its own motion or upon the application of the attorney for the Commonwealth or counsel for the defendant, determines that such person has regained his competence to proceed, the proceedings shall be resumed.  **If the court is of the opinion that by reason of the passage of time and its effect upon the criminal proceedings it would be unjust to resume the prosecution, the court may dismiss the charge and order the person discharged**.

*Id.* § 7403(e) (emphasis added).

Our Supreme Court has held that

> Section 7403(e) does not condition the dismissal of criminal charges on the defendant's restoration of competence.  Instead, … the statutory provision affords trial courts the discretion to dismiss criminal charges "[i]f the court is of the opinion that by reason of the passage of time and its effect upon the criminal proceedings it would be unjust to resume the prosecution."  50 P.S. 7403(e).  This interpretation of Section 7403(e) affords trial

*(Footnote Continued Next Page)*

Judge Beck joins the opinion.

Judge Kunselman files a concurring opinion.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

2/14/2025

_____

courts discretion to dismiss the criminal charges where it would
be unjust to resume prosecution, regardless of whether the
defendant has regained competency, thereby placing the decision
in the hands of the trial court, which is best able to render such
determination on a case-by-case basis….

***Commonwealth v. Humphrey***, 283 A.3d 275, 294-95 (Pa. 2022); ***see also
id.*** at 295 (Brobson, J., concurring) (Under "the plain language [of Section
7403(e)], before a court may invoke this provision, time must have passed
between the original declaration of incompetency and the court's consideration
of the dismissal of charges.  The court then can only dismiss the charges if
this passage of time would make resumption of criminal proceedings,
previously stayed due to the incompetency declaration, unjust.").

Here, upon making the incompetency determination, the trial court did
not stay the proceedings as mandated by Section 7403(b), but rather
immediately dismissed the charges.  Additionally, the court made no findings
pursuant to Section 7403(e), and did not opine "that by reason of the passage
of time and its effect upon the criminal proceedings it would be unjust to
resume the prosecution."  50 P.S. § 7403(e).  As the court's resort to the
remedy of dismissal failed to comply with Section 7403(b) and (e), it was
erroneous.

- 21 -